# Smith *et al.*, Appellants, *v.* Hurd *et al.*

A final account of an executor, allowed by the probate court, cannot subsequently be set aside on petition, except for fraud. Irregularity or error in the allowance of the account could only be corrected by a writ of error, or an appeal.

The widow and the heir may be parties in a joint proceeding for the settlement and distribution of the personalty of an estate.

An executor who has rendered and settled a final account in the probate court, will be compelled to account further to the probate court for all matters arising after such settlement, while he sustains the character of executor.

Whether a proceeding in the probate court to set aside one of its former decrees on the ground of fraud should not be by bill, instead of by petition. ( *Quere.* )

*Quere,* as to whether the probate court has the power to set aside one of its own former decrees for fraud in obtaining the same.

APPEAL from the probate court of the county of Wilkinson.

Hurd and wife, and Caroline Buford, an infant daughter of Mrs. Hurd by her former husband, Samuel H. Buford, filed their petition in the probate court of Wilkinson county against Smith, the appellant, to surcharge and falsify his account of final settlement, as one of the executors of Buford.

Petition stated that in December, 1836, Smith, who was co-executor with Mrs. Buford, (now Mrs. Hurd,) presented his final account with the estate ·to the probate court, and the same was allowed, showing a balance against him of five hundred and sixty-two dollars and twenty-two cents. That the personal property of the testator was appraised at seven thousand eight hundred and sixteen dollars and fifty cents. That in March, 1836, Smith sold certain real property of the estate, under an order of the court, to one Dillahunty, for three thousand three hundred dollars, for which he never rendered any account. That he sold personal estate, amount not known, for which he did not account. That in 1836 and 1837, he hired out several slaves, for a supposed

amount of two thousand dollars, and only rendered in his final account four hundred dollars of this sum. That Smith fraudulently concealed and secreted large sums of money coming to his hands.

The will of Buford was made an exhibit, by which the executor had full power to sell the land and divide the proceeds to the widow and heir, or to divide the land at discretion. The inventory and appraisement, and partial and final settlements were also exhibited.

Smith then demurred to the petition, which was sustained by the court below, and an appeal taken to this court, at a previous term. The decision was reversed, on the ground that there should have been an answer denying the fraud.

On the return of the case to the probate court, Smith filed his answer, which stated that he (Smith) and Mrs. Buford jointly qualified as executor and executrix of Buford, and took possession of his estate, except what Mrs. Buford took exclusively, as shown by schedule I.

Admitted that he received the proceeds of the estate from the grant of letters to the final settlement.

Admitted, the sale of the real estate in March, 1836, on twelve months credit, for three thousand three hundred dollars, and by agreement, the note was taken to him and the executrix at twenty-four months for three thousand six hundred dollars.

Admitted, the sale of certain personal estate in January, 1836, for eight hundred dollars.

Admitted, also, the hire of the slaves in 1836 and 1837, for thirteen hundred dollars to fourteen hundred dollars per year, subject to deductions for loss of time and sickness. He also asserted, that on his final settlement he accounted for all of said hire then received by him. Denied that he has secreted or concealed any of the money or other effects of the estate, or that he has fraudulently failed or refused to account for the negro hire. That his final account does show all moneys then received by him; that he has not yet received the amount for the sale of the land. That he employed no lawyer to assist him in making out his final account, but thought it to be correct in form, as he stated it was in fact and substance. That with the account of final settlement in

December, 1836, he did present and exhibit to the court, a full list of all the property, notes and accounts in his hands belonging to the estate. That the list was still in court, but for reasons unknown to him, had not been recorded. It was exhibited in this proceeding by copy. This exhibit showed, that the property which had been appraised at seven thousand dollars in December, 1832, was increased by the care and attention of the executor to about twenty-two thousand dollars, in four years, and included all the items complained of in the petition, to wit: the notes for the land, for the negro hire, and the sale of the personal estate.

The answer further stated, that after the final settlement, Smith held the effects subject to distribution. That he twice applied to the court in 1838, two years after his final account was passed, to get the court to receive the effects in his hands, and which he had been unable to compel the widow and heir to receive on distribution. That he exhibited a full schedule to the commissioners appointed to distribute the estate, and that Hurd the complainant, prevented the distribution, by refusing to produce the slaves of the estate, of which he had obtained improper possession. Denied that complainants have ever called on him to account. Stated that in January, 1837, he was appointed guardian of complainant Caroline Buford, and still is guardian. He relied on his final account as passed by the probate court in December, 1836, in bar of all further enquiry on that subject, and in bar of all further accounting as executor. Denied that he was further liable as executor for acts done or money received since the final account. Denied that he was bound to account to complainants for the money, property or estate of said Caroline, whilst he is her lawful guardian; and stated that Hurd has all of the slaves of Caroline in possession, and has so had them since 1838.

Exceptions were filed to the answer and sustained, and a further answer was filed showing that the proceeds of all the personal estate sold prior to the final account was eight hundred dollars eighty-seven and a half cents, and the proceeds of sales after that date was five hundred and fourteen dollars eighty-one cents, as shown by the final settlement. The whole sale of personal property was thus one thousand three hundred and forty-five dollars sixty-three and three quarter cents, as made in January, 1836. That the note

Smith *et al.* Appellants, *v.* Hurd *et al.*

for the real estate has been renewed with J. Johnson for four thousand five hundred and three dollars. That the negro hire was for the year 1836, one thousand two hundred and sixty-five dollars, and for 1837, one thousand four hundred and eighteen dollars eighty-three cents. He showed an account of expenses for said negroes. Stated that three hundred and forty dollars of the negro hire was received before his final settlement, and is embraced in his account, and that the balance, nine hundred and twenty-five dollars, and the whole hire for the year 1837, has been since received in Mississippi money, now uncurrent, which was the best that could then be done, and was generally received for all collections. He had managed to convert most of it into good funds, by deducting interest. Showed expenditures for the estate and for Mrs. Hurd of one thousand two hundred and eighty dollars eighty-seven cents, not included in his final account, and prayed their allowance.

No further proof was taken, but the case went to hearing on the petition, answer and exhibits. The judge below ordered the final settlement to be set aside, and a new account taken. From this decree an appeal was prosecuted to this court. The errors assigned are,

1. The court erred in taking jurisdiction after a final settlement of the administration account.

2. Said court has no original jurisdiction growing out of frauds, accidents, &c., connected with the conduct of an administrator, so as to call him to account therefor, after settlement of his account.

3. The demurrer should have been sustained.

4. The court erred in opening the account generally, and refering it to a commissioner.

5. The complainants having separate interests, one being the widow and the other the infant heir, could not join in the petition.

6. Appellant being guardian of one of complainants, is not liable to the form of proceeding and relief prayed for.

7. The bill should have been dismissed on the answer coming in, and a decree of distribution ordered in favor of any parties entitled who might apply.

Smith *et al.* Appellants, *v.* Hurd *et al.*

Boyd for appellants.

Under the first assignment of errors, we refer to 5 Howard, 739, 741; 1 *Ib.* 452; Art. 4, sec. 18, of the constitution. The petition (page 2) shows that the administration account had been settled, and all connection with the probate court ended, except what remained of its power to enforce orders of distribution. The *subpœna* issued in the case (page 1) was directed to the plaintiff in error individually, and not as executor.

The exhibits filed with the petition sufficiently showed that the items alleged to have been left out of the administration account, either accrued after the final settlement, or were included in it. And the remaining general charge of fraud required no answer, and so the demurrer was good.

Under the fourth assignment of errors we refer to 3 John. Ch. Rep. 595, 596; 2 *Ib.* 210 ; 2 Vesey, (senior,) 564; 1 Howard, 454, 463, 464. The reason of the rule is obvious. The defendant has no notice to contest any matter not specially pointed out. And after lapse of time, it would be onerous to require affirmative proof of what has been once settled by an adjudicated account. Further: if the defendant admits the items of surcharge or falsification, then complainant has obtained all that he specifically asks, and ought not to receive more at the hands of the court than he demands. If he does not admit, then the proof, as in all other contests, must be confined to the specific allegations.

Under the fifth he refers to 3 Maddox Rep. 10: Mitford's Pleading, third edition, page 182, note 1.

Under the sixth, as guardian, Smith had a right to the control of the property of the ward, and to the rents and profits, and unless for neglect to render his account as guardian, or other breach of that trust, could not be held accountable to his ward. The proceeding against him as guardian is not pretended to have been adopted, and on a final settlement of the administration account he had a right to retain the share of his ward.

7. The petition contained specific charges of omission to render certain items in the administration account. These items were, the hire of the slaves for 1836 and 1837, most of the time after the account had been finally settled; the amount of sales of personal property, and the amount of sales of the real estate.

The answer admitted the amount of these items, and showed that all the money arising from them prior to the rendition of the final account, had been embraced in that account. It further showed that, accompanying that account, a schedule of the balance, consisting of notes not then (or now) due, had been rendered and received and marked by the probate clerk, but, for some reason not known, had not been recorded. Here, then, the petitioners had obtained a full discovery of all they asked, and the executor admitted the assets to be still in hand. Clearly, the bill should then have been dismissed. The relief was clear in the probate court to compel a distribution, or the courts of common law were open to the distributees or legatees to assert their rights. It is a universal rule of chancery practice, that, where the defendant to a bill of discovery makes a full disclosure, (and it will be taken to be full unless the complainant takes steps to make it more complete,) the bill is dismissed. The discovery having been made, the party entitled to it can then use it as his interests require. There certainly was no ground to open the account further than the items charged in the petition; for, if the petitioner complained that any other items than those specified had been omitted by the executor, we have seen he would not be permitted to extend his inquiries to them, having failed to notice them in his petition. If the objection, however, was that any items included in the account were incorrect, and should not have been allowed, then the answer is complete that these things should have been contested in the probate court, and, if improperly allowed there, an appeal to this court, and not a new accounting, would correct that error. 5 How. 739.

The court, in examining all the papers, will not find any reason for desiring to open this account of administration. The utmost minuteness and particularity will be found to characterize every step of the executor. Counsel have never examined a similar transaction where there was less evidence of fraud. On the contrary, there is the strongest proof of uncommon skill and successful management, coupled with an honest and faithful discharge of duty. The estate, when received by the executor in December, 1832, was appraised at under eight thousand dollars, and was heavily encumbered with debts. There were in all nineteen

slaves, of all ages and descriptions, and, from the minute description filed with the answer of the executor, they were an inferior lot. He held the property four years, and meantime supported the widow and two children a part of the time, and all of the time the widow and one child.

When he closed his account he had paid near fifteen thousand dollars of debts, twice the appraised value of the estate; he had added, by purchase, three full hands to the slave force, at a cost of twenty-seven hundred dollars, and finally reports, at the close of his official capacity, in December, 1836, a property of one description or another, to be divided between the widow and heir, of twenty-two thousand eighty-five dollars ten and three-fourth cents. All this was the result of honest, faithful, skillful management; for the sale of the real and personal estate, when you deduct from their amount the value of the three slaves purchased by him, left but a trifling balance (some two thousand dollars) to aid him in bringing this insolvent estate to such a condition of prosperity. We risk nothing in saying that the records of the probate court will furnish few instances like that presented by the simple record under review.

MONTGOMERY on the same side.

C. P. SMITH for appellees.

1. The foundation of the 1st, 2nd, 3rd and 5th assignments of error, is utterly destroyed. That of the three first by direct and unequivocal adjudication; that of the last by inevitable inference.

An appeal extends to all questions arising from the commencement of the suit to the final decision, which is sought to be reversed. And it matters not by which of the parties litigant the appeal may have been prayed. Like a demurrer in an action at law, it brings under review every preceding step taken in the cause by either of the parties. The decision of this court, reversing the decree of the probate court dismissing the bill, must therefore be held as decisive of the question of the proper joinder of the parties complainants. Join's Executor *v.* Handley, 3 Bibb, 225.

So far as that decision extends, it has settled the law of the case,

and cannot now be questioned. 1 Porter's Rep. 321; Gee *v.* William-son.

2. But were it competent now to raise this question, it is believed that the joinder of these parties, who are the sole distributees of Buford's estate, is perfectly proper.

The object of the bill is to open the administration account of the executor, and to compel him to account with the probate court. The complainants have a joint interest in the estate of the testator, and the liability of the appellant arises out of the same subject matter and the same relation.     Here one general right is claimed against the same individual, and no objection can arise, because distinct examinations and separate accounts will not be required. If one general right may be enforced in the same suit against different defendants who have separate and distinct interests, it would appear to follow by inevitable consequence, that different persons who have the same right, attaching to the same fund, and springing out of the same relation, may jointly enforce it against one defendant.     Mitford's Chan. Pl. p. 147; 4 John. Chan. Rep. 204; Story's Eq. Pl. 75; 1 John. Ch. Rep. 349, 2nd Ed.; 3 P. Williams, 343; 1 Vernon, 29.

3. The 4th assignment of error, questioning the decree of the probate court opening the final account generally, and referring it to a commissioner, will be next considered.

This order or decree was made after the filing of the amended answer, and is based exclusively on the averments of the bill and the admission of the appellant in his said answers.     The material questions therefore, to be considered under this head are, whether the allegations of mal-administration, and fraud on the part of the executor in the said final settlement, are sustained by the admissions contained in the answers, and whether the final account should have been opened generally.     We will consider the latter first.

1. The decision of the probate court upon the final account allowing the same, and discharging the appellant from his executorial liabilities, was conclusive on the rights of the appellees, unless it could be reversed by the appellate court, or vacated on the charge of fraud.     To have compelled the executor to account for money belonging to his testator, admitted to be in his hands,

and which he had fraudulently concealed, in the face of a decree final in its character, and discharging him from all responsibility, would involve the most palpable legal absurdity. If the facts present a case where the order of the probate should have been vacated, the exception cannot be understood as denying that it should have been vacated, but as asserting that it should only have been partially set aside. But it is deemed superfluous to assert that as a judgment or decree cannot by any legal analysis be resolved into an elementary state, where the ingredients which are unsound and fraudulent may be perceived and extracted from those which are sound or just, if tinctured with fraud, must be wholly void.

As the auditor or commissioner to whom the amount was referred, would be compelled to retain the amount according to the allegations of the bill and the proofs, all of which are contained in the answers of the appellant, the report of the commissioners would be but a continuation of the administration account, as presented at the December term, 1836, by charging the executor with the moneys received by him previously, and with which he is not therein charged. And under the order of reference, neither of the legatees would have the right to surcharge or falsify any item of charge therein, which from its character the executor would have a right to make. We therefore assume that in the decree setting aside the previous order of said court, and referring the account, there was no error, if the affirmative of the former question can be maintained.

2. Let us see, then, whether fraud and mal-administration have been satisfactorily established. As there is no other proof, the statements of appellant's original and amended answers must determine the question. The answer denies that the executor failed or neglected to account for any money which had come to his hands, previous to the allowance of his said final account in December; 1836; or that he had fraudulently secreted any of the funds of his testator's estate; and avers that he thought that he had settled fairly and legally with the court. But on the other hand, he admits, as charged in the bill, that he did use personal property to the amount of one thousand three hundred and forty-five dollars and sixty-three and three-fourth cents in January, 1836, out

of which he accounted for four hundred and forty-five dollars and eighty-one cents.    The balance he admits to have received since December, 1836.

He admits, as charged, that the slaves belonging to Buford's estate in his charge and undistributed were hired out in the years 1836 and 1837, for the aggregate amount of two thousand six hundred and eighty-three dollars and eighty-three cents; that three hundred and forty of that sum was received and accounted for at the said settlement; that he has since received the remainder.

He admits, as charged, that the real estate of said Buford was sold in March, 1836, for three thousand three hundred dollars, and that by an agreement he took a note from the purchaser at twenty-four months for three thousand six hundred dollars; and that since his discharge he has renewed the note, which, interest included, amounted to four thousand five hundred and three dollars; making the sum, exclusive of interest, of seven thousand seven hundred and forty-seven dollars and sixty-five and three-fourth cents.

This large amount of money was produced in part by a sale of the real estate of an infant heir, and a portion of the testator's personal property.    In an equitable point of view, it was so much money of testator's estate in the hands of the executor at the time of his final settlement, with which he should have charged himself.    This is direct and unequivocal fraud.    A denial of fraud, of fraudulent neglect, and fraudulent secretion of the assets of testator's estate, is directly contradicted in the admission of facts. The denial of fraud in the answer cannot have the least weight, when the answer admits facts which in law and equity constitutes direct fraud.    Suppose the answer, instead of admitting these facts, had denied all of the allegations of the bill, and the complainants had established these facts by sufficient evidence, would not the fraudulent acts alleged be undeniably established? and the law, if it were at all material, would infer the fraudulent intention.    We therefore assert that the allegation of mal-administration and fraud have been fully established.

4. The sixth exception, to wit: that the appellant being guardian of one of complainants, is not liable to the form of proceeding and relief prayed for, is wholly without foundation.    The fact of guardianship to one of complainants, is not plead in bar of

the hearing sought, nor insisted on in the answer as a plea, and is wholly unsustained by any proof. But were it admitted, it would constitute no objection. The ward could not have pursued the executor for the recovery of her distributive share by her guardian, for the obvious reason that the executor and guardian are the same person. It is perfectly competent for the ward, by her next friend, to institute proceedings against the guardian for the enforcement of rights growing out of that relation. It is not to be controverted, therefore, that the ward, by her next friend, may file her bill for account against the executor of her father's estate, when that executor happens to be her guardian.

5. The seventh assignment is equally untenable. If the bill should have been dismissed on the coming in of the answer, the order or decree of the probate court allowing the final account of the executor would have remained untouched, and would have been an absolute bar to any further proceedings. There would have been no case!

Mr. Justice CLAYTON delivered the opinion of the court.

This was a petition filed in the probate court of Wilkinson county by Justus Hurd and his wife, who was the widow of Samuel H. Buford, deceased, before her marriage with said Hurd, and by Caroline Buford, by said Hurd, her next friend, against the appellant, who was the executor of Buford. The bill alleges that the executor had made a final settlement of his account in December, 1836, which had been allowed and confirmed by the probate court; but charges that the account was fraudulent and unjust; that the executor had fraudulently concealed large sums of money not stated in the account, and had fraudulently neglected to account for the entire proceeds of the personalty. It then prays that the account may be opened, and the order confirming it set aside, and that a new account be taken. Several omissions are pointed out. To this petition there was a demurrer, and the decision of this court upon the demurrer will be found in 5 Howard, 562. After the cause was remanded to the probate court an answer was filed, which contains a denial of all fraud in the settlement, and says that the account was fair and full, and embraced all his transactions in regard to the estate, so far as it was then wound up.

Smith *et al.* Appellants, *v.* Hurd *et al.*

That at the same time he filed a list and schedule of all other notes and claims belonging to said estate then uncollected, and which includes all the items mentioned in the bill as omitted in the settlement, but which, from some cause not known to the respondent was not recorded.    Again, at March term, 1838, he applied to the probate court for leave to file another account, comprehending his acts after the settlement in 1836, which was refused by the court.    A copy of this inventory and of the order of refusal accompanies the answer.    It states that he exhibited to the commissioners appointed to make distribution of the estate a list of all notes and claims due the estate; and that he was obstructed and hindered from making the division by the conduct of the complainant Hurd.    He became the guardian of the petitioner Caroline in 1837, and is still such; he denies that he was ever requested to account farther before the petition was filed, and insists upon the settlement of 1836 as final, and as a bar to the relief asked for in the petition.    The probate court set aside the former settlement, and decreed a new account to be taken, embracing all the acts of the executor from the beginning.    From this order an appeal is taken to this court.    There was no testimony taken on either side, and the case was heard upon the bill, answer and exhibits.

The account of the executor, as settled in 1836, cannot be set aside for any irregularity or error in the proceedings: that could only have been done by appeal.    Shottenkirk *v.* Wheeler, 3 John. Ch. 280.    The only question is, whether there was such fraud as would authorize the court to vacate it.    After a careful examination of the record, we do not perceive that there is.    The estate appears to have been judiciously managed, and not the slightest intention is manifested to do injustice to the parties.    All the litigation appears to have grown out of the failure to record the inventory of notes and claims due and unpaid at the time of the settlement, and which according to the answer was then filed, and out of the refusal of the court at a subsequent term to permit the executor to make a further settlement.    The order therefore setting aside the former settlement is erroneous, as that settlement was conclusive, and could only be impeached in an original proceeding, on ac-

count of fraud in obtaining it. Griffith's Administrator *v.* Vertner and Wife, 5 How. 738; Gildart *v.* Starke, 1 How. 454.

The objection taken to the uniting of the petitioners in the suit as parties, cannot be sustained. Their interest is not separate and distinct in that sense which prohibits their joining in the prosecution of a claim in which they have a right in common. The claims of an heir to realty, and of a distributee to personalty, are different, and cannot be united in one suit. 3 Howard, 258. But legatees or distributees who have an interest in a common fund, where neither has priority, but each is entitled to a share, ought all to be parties, according to the general rule. Richardson *v.* Hunt, 2 Mun. 148; 2 Robinson's Practice, 270. Such was this case. The defendant held a fund consisting entirely of personalty, belonging to the complainants, derived from a single source; their relative rights might therefore be very *properly adjusted* in one suit. The proceeding is against the defendant entirely in his character of executor; as the guardian of the infant complainant he is not made a party at all. Where two legal characters of different kinds are sustained by one person, they are as wholly distinct as if they pertained to two, and the party must be dealt with solely in reference to the character in which he is brought before the court. 2 Bland, 99; 3 Peters' S. C. Rep. 90; May *v.* Tomkins, 6 Mun. 520. No decree can be made in this cause affecting the rights of the defendant as guardian.

It is insisted by the counsel of the appellant, that he cannot be required to make any further settlement or account, in regard to his transactions as executor, since the settlement which is called final in the pleadings. It is difficult to perceive on what principle this exemption from further accountability is claimed. As long as he sustains the character of executor, and continues to act in that capacity, he must be liable to give an account of his acts to the tribunal from which he derives his authority. It is manifest from the answer that the appellant regards himself as executor so late as March, 1838, at which time he presented a petition as executor to the court, praying that he might be permitted to present a new account. There is nothing in the record to show that he has since ceased to sustain that relation; and he must still be bound to make a settlement of his accounts not comprehended in

the former settlement, and originating since its date. This direction is therefore given. In other words, a settlement is directed to be had, to embrace all the matters pointed out in the petition and admitted in the answer not to have been included in the former account.

It is not intended in this opinion to interfere with the rights and duties of the appellant as the guardian of the infant petitioner. He is not before us in that capacity, and we leave him to act in that respect as may be lawful and proper.

The judgment will be reversed and the case remanded, to be proceeded in according to this opinion.

But for the decision upon the demurrer in this case, it might be questioned whether a petition in the probate court to set aside one of its former orders for fraud in obtaining it, could be sustained. The general doctrine is, that the proceeding must be by bill, not by petition. Cooper Eq. Pl. 97. But this is a minor objection. The difficulty is as to the jurisdiction of the court in such case. The power to set aside a probate or any other order of court obtained by fraud, belonged in England not to the ecclesiastical, but exclusively to the chancery court. See 1 Vesey, sen. 283, Banugly *v.* Powell. The ecclesiastical courts in England had full power and jurisdiction in all matters of administration, and matters testamentary; and this is the extent of jurisdiction conferred upon our probate court by the constitution. The same instrument establishes a superior court of chancery, with full jurisdiction in all matters of equity. The power to vacate a judgment, order or decree, for fraud, has in England been uniformly held to pertain to a court of equity alone. It is the exercise of an original, independent, not auxiliary, jurisdiction. All equity powers here belong to the court of chancery, except such as are of necessity construed to pertain to the probate court, to enable it to fulfil the destiny prescribed to it by the constitution. Each court is the creature of the constitution, and each equally the object of its favor, there should be no encroachment upon the jurisdiction of either. It is with me matter of doubt whether the power to vacate an order for fraud can be regarded as necessarily incident to the other powers of the court of probate.

I revere the maxim which warns us to adhere to decisions.

But upon a constitutional question, resting on a single case, in which the point does not appear to have been presented or argued, and which is not expressly adverted to in the decision, it may be permitted to me to reserve an opinion, until full argument is had, should the point again arise. And this the more especially, since in this case, according to the opinion of the court, there are no facts to warrant the exercise of such jurisdiction, even if it exist.

Decree reversed.